UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RGIS, LLC,

        Plaintiff,        CASE NO. 19-11866
                                   HON. DENISE PAGE HOOD

v.

KEITH GERDES,

        Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [#4] AND DENYING DEFENDANT'S EX PARTE MOTION FOR ADJOURNMENT OF PRELIMINARY INJUNCTION HEARING [#9]**

    **I.    BACKGROUND**

    **A. Procedural Background**

On June 24, 2019, Plaintiff RGIS, LLC ("RGIS") filed a Complaint against Defendant Keith Gerdes ("Gerdes") alleging: Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count 1); Breach of Contract for non-compete obligations (Count 2); Breach of Contract for improper use of confidential information and company property (Count 3); Misappropriation of Trade Secrets under the Michigan Uniform Trade Secrets Act ("MUTA"), M.C.L. 445.1901 *et seq.* (Count 4); and Breach of the Duty of Loyalty (Count 5). (Doc # 1) On July 1, 2019, RGIS filed a Motion for Preliminary Injunction to enjoin Gerdes from directly and indirectly breaching any provisions of an agreement between both

parties. (Doc # 4) Gerdes did not file a response to RGIS' Motion, but instead filed a Motion to Dismiss RGIS' Complaint for Lack of Personal Jurisdiction on July 29, 2019.[1] (Doc # 7) A hearing was held on RGIS' Motion on August 14, 2019.[2]

On August 8, 2019, Gerdes filed an Ex Parte Motion for Adjournment of Preliminary Injunction Hearing. (Doc # 9) RGIS filed a Response on August 9, 2019. (Doc # 11) Gerdes' Motion was also heard before the Court on August 14, 2019.

**B. Factual Background**

The facts according to RGIS are as follows. RGIS is a company that provides inventory services, temporary help, merchandising, space optimization, and store surveying and mapping services to retail, wholesale, commercial and supply chain industries throughout the world. (Doc # 1, Pg ID 2) Gerdes has been an employee with RGIS for approximately 30 years. (*Id.* at 3.) Gerdes began his employment with RGIS in 1989 as a part time auditor, and in October 1991, he was promoted to an Operations Manager. (*Id.*) In March 2016, Gerdes was again promoted, and became RGIS' Vice President. (*Id.*)

---

[1] This Motion has not been fully briefed, but is set to be heard before the Court on September 25, 2019. (Doc # 8)

[2] At oral argument, Gerdes was permitted to argue against the Motion for Preliminary Injunction.

Throughout his time with RGIS, Gerdes was subject to employment agreements, with the most recent being the December 16, 2005 Operations Manager Employment Agreement that is at issue ("Agreement"). (Doc # 1-1) By signing the Agreement, Gerdes agreed to various obligations both during and after his employment with RGIS. (Doc # 1, Pg ID 3) Specifically, Gerdes agreed to the abide by the following conditions:

> **4. <u>Agreement Not to Compete</u>**
>
> A. During the period of employment and for a period of one (1) year thereafter, Employee will not, without the written consent of Company, directly or indirectly, own any interest in any corporation, partnership, proprietorship, firm or association which is involved, either directly or indirectly, with the Business of the Company (as defined hereafter), or which otherwise competes with the Business of Company. The "Business of the Company" shall be defined broadly to include the provision of merchandising, mapping and inventory services to the retail industry and all activities supportive of an incidental to such services.
>
> B. During the period of employment and for a period of one (1) year thereafter, Employee will not become employed (as an employee, agent, consultant or otherwise) in any corporation, partnership, proprietorship, firm or association which engages in the Business of the Company or otherwise competes with the Company.
>
> C. During the period of employment and for a period of one (1) year thereafter, Employee will not solicit, sell or contract, with a view to selling any product or service, any personal, firm, or corporation from whom the Employee solicited any order or to whom Employee sold any product or service, or otherwise dealt with on behalf of the Company within the two (2) years immediately preceding the termination of Employee's employment with the Company.

D. During the period of employment and for a period of one (1) year thereafter, Employee will not induce any person employed by the Company to leave the employment of the Company.

E. Owing to Employee's involvement in the operations of the Company throughout North America, the geographic scope of this Agreement not to compete shall include anywhere in the United States of America, Mexico and Canada.

**5. Confidential Information**

A. Employee will treat as confidential any information obtained by Employee concerning the customers and suppliers of Company or its business, products, techniques, methods, systems, processes, bidding guidelines, lists, records, plans, or policies; and Employee will not, during Employee's employment or at any time thereafter, disclose such information, in whole or in part, to any person, firm or corporation for any reason or purpose whatsoever or use such information in any way, or in any capacity, other than as an employee of Company in furtherance of its interests. Upon the termination or cessation of Employee's employment, or sooner if so required by Company, Employee will forthwith deliver to Company any and all engineering drawings, literature, documents, data, information, order forms, price lists, memoranda, correspondence, customer and prospective customer lists, customers, orders, records and cards acquired, compiled or coming to, Employee's knowledge or custody in connection with Employee's activities as an employee, and all machines, parts, equipment, and other materials received by Employee from Company, or from any of its customers or principals, in any connection with such activities.

B. The Company has developed a sophisticated, state-of-the-art inventory service system ("System") and has disclosed such System to Employee, who, absent this provision, could transfer his/her knowledge of the existences of and the information contained in such System. The System consists of hardware and software for handheld computers, data compilation, data storage and data transmittal, and the know-how to create and implement such information.

The above described System, its design, Implementation and use, and the information it contains, is unique to Company, is proprietary, confidential and a valuable business property. In consideration of the disclosure of the System by Company to Employee, and in exchange for the granting of access to the information contained in the System to Employee, Employee agrees to protect and keep secret and confidential the existence of, and information contained in, said System. Employee agrees that the System is, and shall remain, the exclusive property of Company, and agrees not to copy, or in any way reproduce, or use said System, except in the discharge of his/her duties for Company, and will do nothing to impair the secret and confidential nature of said information by disclosing same to others, without the express written consent of Paul A. Street, Chief Executive Officer.

**6. <u>Remedies for Breach</u>**. In the event Employee breaches the covenants not to compete or not to disclose confidential information contained herein, the Company shall be entitled to obtain the following remedies, in addition to any other remedies to which it may be entitled in law or equity;

A. The Company shall be entitled to injunctive relief against the breaching Employee enjoining and restraining him/her from continuing to breach the provisions of this Agreement.

**12. <u>Return of Company Property</u>.** Employee agrees that, at the time Employee leaves the employ of the Company, any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, materials, equipment, computers, cell phones, e-card, credit card, petty cash, Company vehicle, gas card, office keys, pager, badge, other documents or property, or reproductions of any of the aforementioned items, belonging to the Company (whether developed by Employee or other) will be returned to the Company.

**18. <u>Governing Law.</u>** The Agreement shall be governed by and construed under the laws of the State of Michigan. If a proceeding or claim relating or pertaining to this Agreement is initiated by either party hereto, such proceeding or claim shall and must be filed in any state court located in Oakland County, Michigan, or in the U.S. District

> Court, Eastern District, Southern Division, and this Agreement and such proceeding or claim shall be governed by and construed under Michigan law, without regard to conflicts of laws principles.

(Doc # 1-1)

RGIS claims that it maintained certain business information with secrecy that Gerdes had and continues to have access to. (Doc # 1, Pg ID 3) This information consists of proprietary products, software, specific services, techniques, strategic business plans, pricing, and customer preferences ("RGIS Information"). (*Id.*) Gerdes was allegedly involved in both operations and business development for RGIS and was entrusted with RGIS Information. (*Id.* at 6.) Gerdes allegedly had direct knowledge of RGIS Information, including strategic future planning, customer service levels, RGIS's business development strategy, its regional pricing strategy, and its margins. (*Id.*) It is also alleged that Gerdes sat on committees that dealt with business issues such as pricing and business development and was on RGIS's United States leadership team. (*Id.*)

In 2019, Gerdes advised RGIS that he was resigning from the company to allow for personal time and said that he was pursuing opportunities outside of the inventory business. (*Id.* at 7.) However, Gerdes accepted a position with WIS International, Inc. ("WIS"), who is alleged to be a direct competitor of RGIS. (*Id.*) RGIS also subsequently learned that Gerdes failed to return one of RGIS' Surface Pro tablet devices that RGIS provided to him. (*Id.*)

On June 13, 2019, RGIS, through counsel, sent Gerdes a letter reminding him of his obligations under the Agreement, and RGIS demanded a response from Gerdes on or before June 19, 2019. (*Id.*) Instead of responding to the Agreement, Gerdes and WIS filed a lawsuit in the Superior Court of California in Alameda County, *WIS International, Inc., et al. v. RGIS, LLC*, Case No. R 919023561, for declaratory and injunctive relief. (*Id.*) In that Action, Gerdes additionally seeks to invalidate the Agreement's noncompetition, non-solicitation, and confidentiality provisions. (*Id.*)

RGIS claims that Gerdes' ongoing conduct is causing "insurmountable damage" to RGIS' customer good will and reputation, which it claims is irreparable. (*Id.* at 7-8.) RGIS asserts that unless enjoined, Gerdes will continue to breach the Agreement and his duty of loyalty to RGIS through his work with WIS. (*Id.* at 7.) Consequently, RGIS is requesting temporary, preliminary, and permanent injunctive relief as well as damages, including, but not limited to, lost profits, exclusive of interest, costs, and attorneys' fees. (*Id.* at 8.) RGIS also seeks to have Gerdes return, destroy, or delete all copies of RGIS Information. (*Id.* at 12.)

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A. Standard of Review

"The court may issue a preliminary injunction only on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). Four factors must be balanced and considered before

the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(a): 1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *In re Delorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985); *In re Eagle–Pitcher Indus., Inc.,* 963 F.2d 855, 858 (6th Cir.1992); and *N.A.A.C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989). The first factor is the most critical inquiry of the four criteria. *Mason Cnty. Med. Ass'n v. Knebel,* 563 F.22d 256, 261 (6th Cir.1977). In making its determination the "district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir.1997).

### B. Plaintiff's Likelihood of Success on the Merits

#### 1. Personal Jurisdiction

Gerdes argues that the Court lacks the personal jurisdiction over him necessary to hear this case. The Court will therefore consider that issue here because it certainly affects RGIS' likelihood of success on the merits of its claims.

Plaintiff bears "the burden of establishing the district court's personal jurisdiction" over the Defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282

8

F.3d 883, 887 (6th Cir. 2002). As there has been no evidentiary hearing on the matter, the court will "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991)).

General jurisdiction is satisfied in a forum if the defendant's contacts within that forum are "so constant and pervasive as to render it essentially at home." *Diamler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760. Alternatively, personal jurisdiction can be satisfied through specific jurisdiction. Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (citation omitted). Whether a defendant's claim arises out of contacts in the forum is determined applying three criteria. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, the defendant must "purposefully avail himself of the privilege of acting in the forum state...." *Id.* Second, the "cause of action must arise from the defendant's activities there." *Id.* Third, the acts of the defendant must demonstrate a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

The Court finds that for purposes of this Motion, there is a high likelihood that RGIS will be able to show that the Court has personal jurisdiction over Gerdes, thereby succeeding on the merits. As an initial note, the Court recognizes that at this stage, there are no facts that demonstrate that general personal jurisdiction has been met since there is no indication that Gerdes has or had constant or pervasive contacts with Michigan. However, there is support for the contention that specific personal jurisdiction has been satisfied.

As to the first factor, Gerdes purposefully availed himself to Michigan in several ways. Gerdes signed an employment contract with and worked for a corporation that has its headquarters in Michigan. Although he might live and normally work in California, Gerdes regularly traveled to Michigan as part of his employment with RGIS. (Doc # 11, Pg ID 314) Gerdes also agreed to a Michigan forum-selection clause in the event that he was brought to court in an instance such as the one currently before the Court.

The second factor has also been satisfied. The second requirement has been met when "the cause of action, of whatever type, has a substantial connection with the defendant's in-state action," and "only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989). The cause of action has a substantial

connection with Gerdes' in-state action since Gerdes visited Michigan regularly for work and consented to having this case heard in Michigan by way of signing the Agreement that contained a Michigan forum-selection clause.

The third factor has been met as well. When factors one and two of *Southern Machine* test are satisfied, there is an inference that the third reasonableness factor is satisfied as well. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996) (citation omitted). When assessing the third factor, courts must weigh: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir. 2005). These factors all weigh in favor of specific personal jurisdiction: (1) there is no burden on Gerdes since he is accustomed to traveling to Michigan and he has not argued that he would be burdened; (2) Michigan has an interest in this case due to the Agreement's Michigan forum-selection clause; (3) RGIS has a great interest in obtaining relief because if the instant Motion is not granted, it could negatively impact its company's current and future success; and (4) the only other state that might have an interest in adjudicating this case is California, but because this case involves Michigan law, it would be most efficient if the case remains here.

## 2. Misappropriation of Trade Secrets[3]

A plaintiff in a trade secrets case bears the burden of pleading and proving the specific nature of the trade secrets. *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 662 F.Supp.2d 855, 859 (E.D. Mich. 2009). The claimed trade secret must be specifically identified, and its unique economic value explained as Michigan courts have held that an alleged trade secret must be identified "clearly, unambiguously, and with specificity." *Utilase, Inc. v. Williamson,* 188 F.3d 510 (Table) (6th Cir. 1999) (quoting *Shatterproof Glass Corp. v. Guardian, Glass Co.,* 322 F.Supp. 854, 867 (E.D. Mich. 1970) ).

"A trade secret will not be protected by the extraordinary remedy of injunction on mere suspicion or apprehension of injury. There must be a substantial threat of impending injury before an injunction will issue." *Allis–Chalmers Mfg. Co. v. Continental Aviation and Engineering Corp.,* 255 F.Supp. 645, 654 (E.D. Mich. 1966). *See also Kelly Servs., Inc. v. Marzullo,* 591 F.Supp.2d 924, 942 (E.D. Mich. 2008) ("It is well established that an injunction will not lie upon the mere

---

[3] RGIS alleges misappropriation of trade secrets against Gerdes in violation of both the DTSA (federal) and the MUTSA (state). Since the elements of misappropriation under both acts are substantially similar, the Court addresses them together. *See* 18 U.S.C. § 1839(5); MCL § 445.1902(b).

apprehension of future injury or where the threatened injury is speculative or conjectural.") (internal quotation marks and citations omitted).

RGIS argues that the RGIS Information constitutes trade secrets according to DTSA. RGIS claims that it took reasonable measures to keep the RGIS Information secret and contends that such information derives economic value from not being generally known or readily ascertainable to others. RGIS additionally contends that Gerdes has or will disclose that information to WIS without RGIS' express or implied consent to do so.

Especially considering that Gerdes has failed to respond to the instant Motion and argue otherwise, the Court finds that RGIS is likely to prevail with its Misappropriation of Trade Secrets claims. RGIS Information constitutes trade secrets under the DTSA[4] *and* MUTA[5]. Further, RGIS has demonstrated, for purposes of this Motion, that it has attempted to keep its information private and that the information derives independent economic value from not being readily ascertainable.

### 3. Breach of Contract

---

[4] *See* 18 U.S.C. § 1839(3)(A)-(B).

[5] *See* MCL § 445.1902(d).

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994). "Express provisions for termination govern a contract and courts cannot create a contractual liability where the express intent of the parties was to terminate the agreement upon a given condition." *E3A v. Bank of America, N.A.*, No. 13-10277, 2013 WL 1499560, at *2 (E.D. Mich. Apr. 11, 2013).

RGIS contends that Gerdes clearly violated the Agreement by competing with RGIS and deciding to work for WIS. Here, there is a valid contract, with terms, that has been allegedly breached. RGIS' injuries consist of the potential dissemination

of its trade secrets by Gerdes.  The Court is satisfied that RGIS would likely prevail with its breach of contract claim.

### 4. Breach of the Duty of Loyalty

RGIS alleges that Gerdes breached a duty of loyalty that it had to RGIS by misappropriating, disclosing, and/or using RGIS' trade secrets in violation of the Agreement.  However, Michigan does not recognize such an implied duty of loyalty to carry out contractual obligations.  *See London v. Am. Hearing Centers, Inc.*, No. 245774, 2004 WL 2124626, at *5 (Mich. Ct. App. Sept. 23, 2004).  Therefore, there is no likelihood that RGIS would prevail with this claim on its merits.

### C. Irreparable Injury Without the Injunction

It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1991).  However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate.  *Id.* at 511-12.  "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."  *Id.* at 512.  "Courts have held that both potential damage to reputation and likelihood of confusion constitute irreparable injury."  *Vuitton v. White*, 945 F.2d 569, 576 (3d Cir. 1991).

Here, RGIS has demonstrated that it would be injured irreparably if the Court did not grant the instant Motion. The injuries allegedly suffered by RGIS have potentially resulted in loss of customer goodwill, reputation, and RGIS' ability to compete with its competitors. No amount of money damages would adequately compensate RGIS for these injuries.

### D. Harm to Others

When courts decide whether to grant a preliminary injunction, they are required to consider the harm that the injunction would cause the non-movant. *See Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 33 (6th Cir. 2011). If the Court were to grant the instant Motion, there would arguably be some harm caused to Gerdes because he would not be able to work at WIS. However, the Court does not find this harm to be significant as Gerdes has the ability to work for other employers that are not competitors of RGIS.[6] Further, because Gerdes has not responded to the instant Motion, he has not set forth any arguments to the contrary. The Court also notes that there would seemingly be no harm caused to anyone in the community if Gerdes was required to abide by the terms of the Agreement.

### E. Public Interest

---

[6] At oral argument, Gerdes claimed to be harmed by the inability to obtain other employment because of his age, but he has not sufficiently supported this argument.

16

The Court finds that an injunction would serve the public interest. The public has an interest in ensuring that contracts are not breached and that employees comply with noncompete agreements. The public similarly has an interest in protecting trade secrets.

### F. Weighing the Factors and Injunctive Relief

After weighing the above factors, the Court finds that RGIS is entitled to a preliminary injunction enjoining Gerdes from refusing to abide by the terms of the Agreement. Gerdes shall not work at WIS until a year from the date that he resigned from RGIS. Gerdes also must return any property to RGIS that belongs to it. Finally, Gerdes shall not disclose any of RGIS' trade secrets to other parties.

## III. DEFENDANT'S MOTION FOR ADJOURNMENT OF PRELIMINARY INJUNCTION HEARING

Gerdes requested that the Court adjourn the preliminary injunction hearing because it asserts that the Court is required to address his outstanding Motion to Dismiss since it pertains to Gerdes' jurisdictional contentions. (Doc # 7) Alternatively, Gerdes asked for the Court to expedite the briefing on his Motion so that it could be heard on the same day that the Court addressed RGIS' Motion (Doc # 4). For the reasons set forth below, the Court denies Gerdes' Motion.

The basis for Gerdes' Motion to Dismiss is that the Court lacks personal jurisdiction to hear the instant case. Although the Court acknowledges that it must

17

have personal jurisdiction over a party before a court can issue injunctive relief against that party,[7] the Court has already addressed that issue above, and therefore, the Court can proceed to grant RGIS' request for injunctive relief.

While the Court grants RGIS' preliminary injunction, the Court will address Gerdes' Motion to Dismiss during an upcoming hearing (Doc # 7; Doc # 8) after that Motion has been fully briefed.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (Doc #4) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant shall not work at WIS International, Inc. until a year from the date that he resigned from his previous position with his former company, RGIS, LLC.

IT IS FURTHER ORDERED that Defendant must return any property to Plaintiff that belongs to it.

IT IS FURTHER ORDERED that Defendant shall not disclose any of Plaintiff's trade secrets to other parties.

---

[7] *See* Action Freight Servs., LLC v. Thorne, No. 07-12553, 2007 WL 1830783, at *1 (E.D. Mich. June 22, 2007).

IT IS FURTHER ORDERED that Defendant's Ex Parte Motion for Adjournment of Preliminary Injunction Hearing (Doc #9) is **DENIED**.

                                                                    s/Denise Page Hood
                                                                    United States District Court Judge
DATED:  August 21, 2019