## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RGIS, LLC,

                    Plaintiff,              CASE NO. 19-11866
                                            HON. DENISE PAGE HOOD
v.

KEITH GERDES,

                    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS [#7] AND GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS [#7]

### I.    BACKGROUND

#### A. Procedural Background

On June 24, 2019, Plaintiff RGIS, LLC ("RGIS") filed a Complaint against Defendant Keith Gerdes ("Gerdes") alleging: Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count 1); Breach of Contract for non-compete obligations (Count 2); Breach of Contract for improper use of confidential information and company property (Count 3); Misappropriation of Trade Secrets under the Michigan Uniform Trade Secrets Act ("MUTA"), M.C.L. 445.1901 *et seq.* (Count 4); and Breach of the Duty of Loyalty (Count 5). [ECF No.1] On July 1, 2019, RGIS filed a Motion for Preliminary Injunction to enjoin Gerdes from directly and indirectly breaching any provisions of an agreement between both

parties.  [ECF No. 4] Gerdes did not file a response to RGIS' Motion, but instead filed a Motion to Dismiss RGIS' Complaint for Lack of Personal Jurisdiction on July 29, 2019.  [ECF No. 7] A hearing was held on RGIS' Motion on August 14, 2019.

On August 8, 2019, Gerdes filed an Ex Parte Motion for Adjournment of Preliminary Injunction Hearing.  [ECF No. 9] RGIS filed a Response on August 9, 2019.  [ECF No. 11] Gerdes' Motion was also heard before the Court on August 14, 2019.   On August 21, 2018 this Court granted RGIS' Motion for a Preliminary Injunction preventing Gerdes from working at WIS International, Inc. ("WIS") until one year after he resigned from RGIS and sharing trade secrets. [ECF No. 13, Pg.ID 443]

### A. Factual Background

The facts according to RGIS are as follows.  RGIS is a company that provides inventory services, temporary help, merchandising, space optimization, and store surveying and mapping services to retail, wholesale, commercial and supply chain industries throughout the world.  [ECF No. 1, Pg.ID 2] Gerdes has been an employee with RGIS for approximately 30 years.  [*Id.* at 3] Gerdes began his employment with RGIS in 1989 as a part time auditor, and in October 1991, he was promoted to an Operations Manager.  [*Id.*]  In March 2016, Gerdes was again promoted, and became RGIS' Vice President.  [*Id.*]

Throughout his time with RGIS, Gerdes was subject to employment agreements, with the most recent being the December 16, 2005 Operations Manager Employment Agreement that is at issue ("Agreement"). [ECF No. 1-1] By signing the Agreement, Gerdes agreed to various obligations both during and after his employment with RGIS. [ECF No.1, Pg.ID 3] Specifically, Gerdes agreed to the following conditions:

**4. <u>Agreement Not to Compete</u>**

A. During the period of employment and for a period of one (1) year thereafter, Employee will not, without the written consent of Company, directly or indirectly, own any interest in any corporation, partnership, proprietorship, firm or association which is involved, either directly or indirectly, with the Business of the Company (as defined hereafter), or which otherwise competes with the Business of Company. The "Business of the Company" shall be defined broadly to include the provision of merchandising, mapping and inventory services to the retail industry and all activities supportive of an incidental to such services.

B. During the period of employment and for a period of one (1) year thereafter, Employee will not become employed (as an employee, agent, consultant or otherwise) in any corporation, partnership, proprietorship, firm or association which engages in the Business of the Company or otherwise competes with the Company.

C. During the period of employment and for a period of one (1) year thereafter, Employee will not solicit, sell or contract, with a view to selling any product or service, any personal, firm, or corporation from whom the Employee solicited any order or to whom Employee sold any product or service, or otherwise dealt with on behalf of the Company within the two (2) years immediately preceding the termination of Employee's employment with the Company.

D. During the period of employment and for a period of one (1) year thereafter, Employee will not induce any person employed by the Company to leave the employment of the Company.

E. Owing to Employee's involvement in the operations of the Company throughout North America, the geographic scope of this Agreement not to compete shall include anywhere in the United States of America, Mexico and Canada.

## 5. **Confidential Information**

A. Employee will treat as confidential any information obtained by Employee concerning the customers and suppliers of Company or its business, products, techniques, methods, systems, processes, bidding guidelines, lists, records, plans, or policies; and Employee will not, during Employee's employment or at any time thereafter, disclose such information, in whole or in part, to any person, firm or corporation for any reason or purpose whatsoever or use such information in any way, or in any capacity, other than as an employee of Company in furtherance of its interests. Upon the termination or cessation of Employee's employment, or sooner if so required by Company, Employee will forthwith deliver to Company any and all engineering drawings, literature, documents, data, information, order forms, price lists, memoranda, correspondence, customer and prospective customer lists, customers, orders, records and cards acquired, compiled or coming to, Employee's knowledge or custody in connection with Employee's activities as an employee, and all machines, parts, equipment, and other materials received by Employee from Company, or from any of its customers or principals, in any connection with such activities.

B. The Company has developed a sophisticated, state-of-the-art inventory service system ("System") and has disclosed such System to Employee, who, absent this provision, could transfer his/her knowledge of the existences of and the information contained in such System. The System consists of hardware and software for handheld computers, data compilation, data storage and data transmittal, and the know-how to create and implement such information.

The above described System, its design, Implementation and use, and the information it contains, is unique to Company, is proprietary, confidential and a valuable business property. In consideration of the disclosure of the System by Company to Employee, and in exchange for the granting of access to the information contained in the System to Employee, Employee agrees to protect and keep secret and confidential the existence of, and information contained in, said System. Employee agrees that the System is, and shall remain, the exclusive property of Company, and agrees not to copy, or in any way reproduce, or use said System, except in the discharge of his/her duties for Company, and will do nothing to impair the secret and confidential nature of said information by disclosing same to others, without the express written consent of Paul A. Street, Chief Executive Officer.

**6. Remedies for Breach**. In the event Employee breaches the covenants not to compete or not to disclose confidential information contained herein, the Company shall be entitled to obtain the following remedies, in addition to any other remedies to which it may be entitled in law or equity;

A. The Company shall be entitled to injunctive relief against the breaching Employee enjoining and restraining him/her from continuing to breach the provisions of this Agreement.

**12. Return of Company Property**. Employee agrees that, at the time Employee leaves the employ of the Company, any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, materials, equipment, computers, cell phones, e-card, credit card, petty cash, Company vehicle, gas card, office keys, pager, badge, other documents or property, or reproductions of any of the aforementioned items, belonging to the Company (whether developed by Employee or other) will be returned to the Company.

**18. Governing Law.** The Agreement shall be governed by and construed under the laws of the State of Michigan. If a proceeding or claim relating or pertaining to this Agreement is initiated by either party hereto, such proceeding or claim shall and must be filed in any state court located in Oakland County, Michigan, or in the U.S. District

> Court, Eastern District, Southern Division, and this Agreement and
> such proceeding or claim shall be governed by and construed under
> Michigan law, without regard to conflicts of laws principles.

[ECF No. 1-1]

RGIS claims that it maintained certain business information with secrecy that Gerdes had and continues to have access to.  [ECF No. 1, Pg.ID 3] This information consists of proprietary products, software, specific services, techniques, strategic business plans, pricing, and customer preferences ("RGIS Information").  [*Id.*] Gerdes was allegedly involved in both operations and business development for RGIS and was entrusted with RGIS Information.  [*Id.* at 6] Gerdes allegedly had direct knowledge of RGIS Information, including strategic future planning, customer service levels, RGIS' business development strategy, its regional pricing strategy, and its margins.  [*Id.*]  It is also alleged that Gerdes sat on committees that dealt with business issues such as pricing and business development and was on RGIS' United States leadership team.  [*Id.*]

In 2019, Gerdes advised RGIS that he was resigning from the company to allow for personal time and said that he was pursuing opportunities outside of the inventory business.  [*Id.* at 7] However, Gerdes accepted a position with WIS, who is alleged to be a direct competitor of RGIS.  [*Id.*]  RGIS also subsequently learned that Gerdes failed to return one of RGIS' Surface Pro tablet devices that RGIS provided to him.  [*Id.*]

On June 13, 2019, RGIS, through counsel, sent Gerdes a letter reminding him of his obligations under the Agreement, and RGIS demanded a response from Gerdes on or before June 19, 2019.  [*Id.*]  Instead of responding to the Agreement, Gerdes and WIS filed a lawsuit in the Superior Court of California in Alameda County, *WIS International, Inc., et al. v. RGIS, LLC*, Case No. RG19023561, for declaratory and injunctive relief.  [*Id.*]  In that Action, Gerdes additionally seeks to invalidate the Agreement's noncompetition, non-solicitation, and confidentiality provisions.  [*Id.*]

RGIS claims that Gerdes' ongoing conduct is causing "insurmountable damage" to RGIS' customer good will and reputation, which it claims is irreparable. [*Id.* at 7-8].

Gerdes argues that the Court lacks the personal jurisdiction over him necessary to hear this case.  Gerdes, alternatively, asks the Court to invoke the *Colorado River* Abstention Doctrine and dismiss the case due to a simultaneous state court action in California.

## II.    LEGAL ANALYSIS

### A. Standard of Review for Personal Jurisdiction

Plaintiff bears "the burden of establishing the district court's personal jurisdiction" over the Defendant.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  As there has been no evidentiary hearing on the

matter, the court will "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991)).

General jurisdiction is satisfied in a forum if the defendant's contacts within that forum are "so constant and pervasive as to render it essentially at home." *Diamler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760. Alternatively, personal jurisdiction can be satisfied through specific jurisdiction. Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (citation omitted). Whether a defendant's claim arises out of contacts in the forum is determined applying three criteria. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, the defendant must "purposefully avail himself of the privilege of acting in the forum state...." *Id.* Second, the "cause of action must arise from the defendant's activities there." *Id.* Third, the acts of the defendant must demonstrate a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

## B. The Court has Personal Jurisdiction

Michigan law recognizes two bases for personal jurisdiction, general and specific. RGIS argues that the Court has general jurisdiction and specific jurisdiction under Michigan's long-arm statute criteria. Michigan's long-arm statute has an "extraordinarily easy" standard to meet. *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000).

Mich. Comp. Laws § 600.705, Michigan's long-arm statute governing the exercise of specific personal jurisdiction over individuals states:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.

After examining the facts of the instant case, this Court is convinced that the Michigan long-arm statute criteria have been met. RGIS and Gerdes "transacted business in Michigan" by signing the Agreement, which contained a forum selection clause and restrictive covenants. Although Gerdes argues that the Agreement was coercive and unconscionable, this Court agrees with RGIS' assessment that "reasonable non-compete agreements are enforceable." *Sherrod v. Genzyme Corp.*,

170 Fed.Appx. 375, 378 (6th Cir. 2006). RGIS asserts that Gerdes is privy to confidential company information and business strategy and is only restricted from working for competitors for one year after leaving RGIS. A period of one year is not unreasonable for an employee at the senior management level. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007) (upholding Michigan's tradition of enforcing non-compete agreements that are "reasonable" and protect "legitimate business interests").

The Court must now address whether Gerdes has sufficient minimum contacts with Michigan that subjecting him to court would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Court finds that Gerdes' contacts with Michigan through his employment with RGIS are sufficient to satisfy the test for specific jurisdiction, and therefore need not address RGIS' general jurisdiction assertions.

The Sixth Circuit uses a three-part test to examine specific jurisdiction. As to the first factor, Gerdes purposefully availed himself to Michigan in several ways. Gerdes signed an employment contract with and worked for a corporation that has its headquarters in Michigan.  Although he might live and normally work in California, Gerdes regularly traveled to Michigan as part of his employment with RGIS.  [ECF No.11, Pg.ID 314] Gerdes also agreed to a Michigan forum-selection

clause in the event that he was brought to court in an instance such as the one currently before the Court. [*Id.*]

The second factor has also been satisfied.  The second requirement has been met when "the cause of action, of whatever type, has a substantial connection with the defendant's in-state action," and "only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989).  The cause of action has a substantial connection with Gerdes' in-state action since Gerdes visited Michigan regularly for work and consented to having this case heard in Michigan by way of signing the Agreement that contained a Michigan forum-selection clause.

The third factor has been met as well.  When factors one and two of *Southern Machine's* test are satisfied, there is an inference that the third reasonableness factor is satisfied as well. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996) (citation omitted).  When assessing the third factor, courts must weigh: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy."  *Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir. 2005).

These factors all weigh in favor of specific personal jurisdiction: (1) there is no burden on Gerdes since he is accustomed to traveling to Michigan and had notice by way of the forum-selection clause; (2) Michigan has an interest in this case due to the Agreement's Michigan forum-selection clause; (3) RGIS has a great interest in obtaining relief because if the instant Motion is not granted, it could negatively impact its company's current and future success; and (4) the only other state that might have an interest in adjudicating this case is California, but because this case involves Michigan law, it would be most efficient if the case remains here. Defendant's Motion to Dismiss is **DENIED**.

## C. Standard of Review for *Colorado River* Abstention

In *Colorado River* the Supreme Court created a "narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conserv. Distr. v. United States,* 424 U.S. 800, 818 (1976). "[A] federal court may defer to a parallel concurrent state court proceeding, when the decision to do so is 'based on wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Taylor v. Campanelli*, 29 F.Supp.3d 972, 976 (E.D. Mich. 2014) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). A district court should abstain under the *Colorado River* doctrine only when it "concludes that the parallel state-court litigation will be an adequate

vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 28 (1983), *superseded on other grounds as stated in Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504 (7th Cir. 1997).

The threshold question is, "are there parallel state court proceedings?" A state court proceeding need not be identical but merely "substantially similar" to be parallel. *Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir. 1998); *see also Bates v. Van Buren Twp.,* 122 F. App'x 803, 806 (6th Cir. 2004). Cases are "substantially similar 'where (1) the parties are substantially similar, and (2) [Plaintiffs'] claims against [Defendant] are predicated on the same allegations as to the same material facts.'" *Taylor*, 29 F.Supp.3d at 977 (citing *Doe v. Ann Arbor Public Schools*, 2012 WL 1110015, at *3 (E.D. Mich. April 3, 2012) (citing *Romine*, 160 F.3d at 340) (citations omitted)). The parties "need not be identical," but "are considered 'substantially the same' for *Colorado River* purposes" when they have "nearly identical interests." *Taylor*, 29 F.Supp.3d at 977 (citing *Heitmanis v. Austin,* 889 F.2d 521, 528 (6th Cir. 1990), and *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)).

### D. The Court Invokes *Colorado River* Abstention

Here, the Court finds that this case is parallel to the California state case. In reviewing the Complaint in the instant case, the parties' filings related to

Defendant's Motion to Dismiss, and the California Court Complaint, the Court finds that both the California case and the instant case derive from the same material facts. First, the parties are nearly the same. The Plaintiff in this case is a defendant in the California matter.  The defendant in this case is the plaintiff in the California case. The California case also involves Gerdes' new employer, WIS, and WIS (a) filed the California case on behalf of Gerdes; and (b) brought the legal claims on behalf of Gerdes that RGIS now challenges.

Second, the California case alleges that RGIS' Agreement is void and unenforceable and violates California's Unfair Competition Law. This case was brought because Gerdes allegedly violated the noncompete clause in his Agreement by going to work for WIS. Both cases arise from—and their respective resolutions turn on—whether the Agreement is enforceable. Both cases require a finding of whether the Agreement prohibits Gerdes from working for a competitor. For those reasons, the Court concludes that the instant case is substantially similar to the California case and that the cases are parallel.

Having determined that the cases are parallel, the Court must decide whether judicial economy warrants abstention by evaluating several factors including (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether

the source of governing law is state or federal; (6) the adequacy of the state court

action to protect the federal plaintiff's rights; (7) the relative progress of the state

and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Colorado River*, 424 U.S. at 818-19; *Romine*, 160 F.3d at 340-41.  These factors

are not a mechanical checklist, but instead "require a careful balancing of the

important factors as they apply in a given case depending on the particular facts at

hand." *Romine*, 160 F.3d at 341 (citation and internal quotations omitted).

Applying the factors to the instant case, the Court finds that it should abstain

under the *Colorado River* doctrine and stay the current proceedings. The first

factor has no relevance as the state court has not assumed jurisdiction over any res

or property. Regarding the second factor, both parties allege that their preferred

forum is the most convenient forum for them. Gerdes claims traveling to Michigan

will be financially burdensome and that several witnesses are located in California.

RGIS, however, argues that its principal place of business is in Michigan and that

Gerdes should have expected to travel to Michigan when he signed the Agreement.

The third factor weighs in favor of abstention. "Piecemeal litigation occurs

when different courts adjudicate the identical issue, thereby duplicating judicial

effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. As

Gerdes acknowledges, the California case is certain to proceed and includes

Gerdes' new employer, WIS. However, "something more than duplicative

15

litigation must exist" to tilt this factor towards abstention. *Atkinson v. Grindstone Capital, LLC*, 12 F. Supp. 3d 156, 164 (D.D.C. 2014) (citing *Colorado River*, 424 U.S. at 817) ("[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."). Not only does the instant case involve duplicative litigation, but it involves nearly identical issues—whether Gerdes' noncompete clause is valid. The presence of two different cases on parallel trajectories will inevitably lead to piecemeal results.

As for the fourth factor, the California case was filed just three business days prior to the instant matter. Various courts have found that such a short gap between the filing of state and federal court matters does not weigh in favor of abstention. *See e.g.*, *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*, No. 17-CV-11888, 2017 WL 4098853, at *11 (E.D. Mich. Sept. 15, 2017) ("Because the Texas lawsuit was filed a mere three days before the federal lawsuit, this factor does not weigh in favor of abstention").

Since the governing law is both state and federal, the fifth factor is neutral. The sixth and eighth factors favor abstention. There is concurrent jurisdiction and no reason to believe that California's state court will be unable to adequately protect RGIS' rights.

The seventh factor also favors abstention. *See Bates*, 122 F. App'x at 807 (explaining that once parallel state court proceedings exist the focus should be "on

the relative progress of the state and federal proceedings"). It would be wasteful to simultaneously litigate this matter in two forums considering that the California case is in the midst of discovery.

As RGIS points out, California denied Plaintiff's Motion for a Temporary Restraining Order seeking to enjoin RGIS' Agreement. But the California state case denied RGIS' Motion to Dismiss and discovery has already begun in the state action. *See Moses*, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").

Precedents in this circuit "support the conclusion that the substantial difference in the relative advancement of the state and federal proceedings justifies abstention." *Bates*, 122 F. App'x at 807. In *Romine*, the court abstained because the state court matter was well into discovery and the state court judge had entered several orders. *Romine*, 160 F.3d at 342. By comparison, the federal action was only in the initial pleadings stage. *Id.* The Sixth Circuit affirmed and held that the advanced nature of the state proceedings "weigh[ed] strongly in favor of [abstention]." *Id.* at 341.

*Romine* is analogous to the instant matter. Here, the California state court denied RGIS' Motion to Dismiss six months ago, and discovery has already begun.

By contrast, proceedings in this federal forum have not progressed past initial pleadings and discovery in this matter has not yet begun.

Having considered and balanced the eight factors, the Court finds that they narrowly weigh in favor of abstention. Although this case is close, the presence of duplicative litigation and a more advanced state court proceeding weigh in favor of abstention.

Having found that abstention is warranted, the Court will stay the case. *See Bates*, 122 F. App'x at 808. A stay "lessens concerns over the statute of limitations, enables the parties to return to the judge who is already familiar with the case, and generally protects all the rights of the parties without imposing any additional burden on the district court." *Id.* And a stay "permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end . . . [and brings] the case back before the same federal judge if a determination is needed as the preclusive effects of the state judgment or decisions." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F. 2d 691, 698 (7th Cir. 1985). Any party with a claim that entitles it to a federal forum, which is not barred by res judicata, may return when the state court proceedings conclude.

## III.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Gerdes' Motion **in Part** and **GRANTS** Gerdes' Motion **in Part** [#7]

IT IS HEREBY ORDERED that Gerdes' Motion to Dismiss as it pertains to personal jurisdiction is **DENIED**.

IT IS FURTHER ORDERED that Gerdes' Motion to Stay proceedings pending an outcome of the California state court proceedings is **GRANTED**.

s/Denise Page Hood
Chief Judge, United States District

DATED:  April 28, 2020